Littlestown National Bank *v.* Penn Tile Works Company.

Argued April 13, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*David R. Perry,* Special Deputy Attorney General, with him *James H. Duff,* Attorney General, for Commonwealth, appellant.

*Samuel O. Clark, Jr.,* Assistant Attorney General, *Sewall Key, A. F. Prescott, Leonard Sarner,* for United States, appellee.

*Richard A. Brown,* for plaintiff.

OPINION BY MR. JUSTICE HORACE STERN, May 21, 1945:

The legal issue here involved deals with the relative priority to be accorded the United States and the Commonwealth of Pennsylvania as lien claimants.

On January 27, 1944, The Littlestown National Bank entered a judgment in Adams County against Penn Tile Works Company, and, on the same date, issued a fi. fa. in pursuance of which the sheriff, on March 4, 1944, sold certain personal property belonging to the judgment debtor. A dispute arose in regard to the distribution of the proceeds of the sale and the sheriff was permitted to pay the fund into court.

The claim of the United States was based upon a lien for employment taxes imposed under section 1600 of the Internal Revenue Code (26 U.S.C.A. sec. 1600; 53 Stat. 183), as amended. Sections 3670 and 3671 of the Internal Revenue Code (26 U. S. C. A. secs. 3670, 3671; 53 Stat. 448, 449), provide that if any taxes are not paid they shall be a lien in favor of the United States upon all property, real or personal, belonging to the taxpayer, such lien to arise at the time the assessment list is received by the collector. Here the lien arose on March 10, 1943, and notice thereof was filed with the Prothonotary of Adams County on July 21, 1943, some six months before the lien of the execution creditor attached by virtue of its levy.

The claim of the Commonwealth was based on liens for unemployment compensation contributions prescribed by section 301 of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended. Section 308.1, which was added to this law by the Act of April 23, 1942, P. L. 60, Sec. 4, provides that all contributions due and payable under the provisions of the act shall be a lien upon the employer's property, real and personal, from the date a lien therefor is entered of record. Here the liens of the Commonwealth arose on January 28, 1944 and March 15, 1944, at which times certified copies thereof, transmitted by the Department of Labor and Industry, were recorded by the Prothonotary of Adams County.

The auditor who was appointed by the court to make distribution held that the proceeds of the sale, after

payment of the costs, should be paid out first on the lien of the Government; as that claim exhausted the fund nothing was available for the liens of the Commonwealth. The Court of Common Pleas confirmed the auditor's report. The Commonwealth appeals on the ground that *its* liens were entitled to priority.

The United States does not assert priority by reason of any sovereign prerogative. And although Congress, under its power to lay and collect taxes, may provide that taxes due to the United States shall have precedence over those due to a state (*County of Spokane v. United States,* 279 U. S. 80), the Government does not claim that there is any statute effective in the present case which confers upon it such a right of priority.[1] It relies solely upon the fact that its lien antedated those of the Commonwealth by nearly a year, and it points to the well settled principle which ordinarily governs the priority of liens, namely, that the one first in time is first in right, and, in the absence of statutory regulations to the contrary, is entitled to satisfaction out of the property to which it is attached before subsequent liens which bind the same property.

How does the Commonwealth seek to overthrow the priority thus apparently assured to the United States? It relies upon section 308.1 which, added to the Unemployment Compensation Law by the Act of April 23, 1942, P. L. 60, sec. 4, provides that whenever the prop-

---

[1] The Government admits, in accordance with established authority, that section 3466 of the Revised Statutes, 31 U. S. C. A. sec. 191, which provides that whenever any person indebted to the United States is insolvent the debts due to the United States shall be first satisfied, is not relevant to the present situation, because it applies only when an insolvent debtor's assets have passed into the hands of some administrative officer or agency for distribution among creditors. And section 3670 of the Internal Revenue Code, 26 U. S. C. A. sec. 3670, 53 Stat. 448, merely enacts that unpaid taxes shall be a lien upon the taxpayer's property; it does not make them a first or paramount lien.

erty of an employer is sold at a judicial sale all contributions which have been entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that state taxes are paid.[2] The payment of state taxes is governed by the Fiscal Code of April 9, 1929, P. L. 343, sec. 1401, which makes such taxes a first lien upon the property, both real and personal, of the taxpayer, and provides that whenever such property shall be sold at a judicial sale all taxes due the Commonwealth shall first be allowed and paid out of the proceeds of the sale before any other claim or lien. Accordingly, the Commonwealth contends that out of the present fund the unemployment compensation contributions due to it should be paid ahead of the employment taxes due the United States and of all other claims or liens whatsoever.

We need not consider whether it was intended by this legislation to confer upon state taxes and unemployment compensation contributions priority not only over other claims and liens arising under the laws of the Commonwealth but also over liens of the United States, for, whatever may have been such intention and whatever interpretation may be given to these statutes, the Supreme Court of the United States has ruled that a priority in favor of the United States which arises from priority in the date of its lien cannot, without the consent of Congress, be impaired or superseded by state law in favor of subsequent liens imposed by authority of any law or judicial decision of the state. In *Michigan v. United States*, 317 U. S. 338, it was held that a tax lien

---

[2] Section 310 of the Unemployment Compensation Law provides for a different order of priority where an employer's assets are distributed pursuant to an order of any court, as in a receivership, assignment for benefit of creditors, adjudicated insolvency, or similar proceeding. Obviously, this section is not applicable to the present case.

securing a federal estate tax [3] takes precedence over later liens securing state taxes, even if the state law purports to make the state liens paramount. The Supreme Court said, per Mr. Chief Justice STONE (pp. 340, 341): "We do not stop to inquire whether this construction of the state statutes is the correct one, for we think the argument ignores the effect of a lien for federal taxes under the supremacy clause of the Constitution. The establishment of a tax lien by Congress is an exercise of its constitutional power 'to lay and collect taxes'. Article I, §8, of the Constitution. *United States v. Snyder,* 149 U. S. 210. And laws of Congress enacted pursuant to the Constitution are by Article VI of the Constitution declared to be 'the supreme Law of the Land and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'

" 'It is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*'. . . . Hence it is not debatable that a tax lien imposed by a law of Congress, as we have held the present lien is imposed, cannot, without the consent of Congress, be displaced by later liens imposed by authority of any state law or judicial decision. *United States v. Snyder,* supra; *United States v. Greenville,* 118 F. 2d 963. Similarly we held that the priority of payment commanded by R. S. §3466 could not be set aside by state legislation. *United States v. Texas,* 314 U. S. 480, 486; *Spokane County v. United States,* 279 U. S.

---

[3] The estate tax lien under section 315(a) of the Revenue Act of February 26, 1926, c. 27, 44 Stat. 80, as amended, (now section 827 of the Internal Revenue Code, 26 U. S. C. A. sec. 827, 53 Stat. 128) differs from the present employment tax lien in that it arises and is effective without demand, assessment or recording (*Detroit Bank v. United States,* 317 U. S. 329). But both liens, once they attach, are vested with the same attributes, and the same principle necessarily applies in regard to any question of priority between them and liens for state taxes.

80; *New York v. Maclay*, 288 U. S. 290; cf. *Missouri v. Ross*, 299 U. S. 72.

"As the federal lien with which we are here concerned attached to private property prior to the acquisition of any interest in that property by the state, we need not consider the extent to which Congress may give, or intended by §315(a) to give, priority to a federal lien over a previously perfected state lien. Compare *New York v. Maclay*, supra, 292; *Spokane County v. United States*, supra, 95; *United States v. Texas*, supra, 484-6."

In *United States v. City of Greenville*, 118 F. 2d 963, thus referred to by the Supreme Court with approval, the Circuit Court of Appeals for the Fourth Circuit, in an opinion by Judge PARKER, held that, after a lien for federal taxes (in that case income taxes) has once attached, it cannot, without the consent of Congress, be affected by the exercise of state taxing power, and, when first in time and consequently first in right, it may not be subordinated or its value impaired by state action.

The auditor and the court below were right in giving priority to the federal lien over the state liens in the distribution of the proceeds of the judicial sale.

Order affirmed; costs to be paid by appellant.